ILLINOIS CENTRAL RAILROAD CO. *v.* S. D. THOMAS.

STREETS. *Dedication. Right of abutting owners. Railroad. Injunction.*
    If a railroad company dedicates a part of its right of way to the pub-
    lic as a street in a city, and permits the city to treat, and the pub-
    lic to use, the same as a street for more than thirty years, it is
    bound by the dedication, and may be enjoined from an unauthor-
    ized laying of tracks thereon by an abutting owner who would
    suffer special damage thereby.

FROM the chancery court of Yalobusha county, second dis-
trict.

HON. T. B. KIMBROUGH, Chancellor.

Appellee filed his bill in equity to enjoin the railroad com-
pany from laying a side track in the city of Water Valley.
Thomas was the owner of a lot fronting, on its western border,
the strip of land known as Main street, upon the eastern side
of which the side track was about to be laid, and which, if
laid, would leave the street too narrow for the convenient trans-
action of the business carried on there. The other material
facts are stated in the opinion of the court.

*Mayes & Harris*, for appellant.

The complainant does not claim title, it will be noted,
through the railroad company. There is no proof that the
railroad company has ever sold a foot of land in Water Valley
in reference to this ground which is now claimed as a public
street, the title to which is claimed by the complainant to be in
the city, nor induced any one to purchase. It is not shown that
any act has been done by the railroad company, from the incep-
tion of its title to the present day, to induce anyone to buy
property with reference to the strip of ground which is claimed
as a public street. Matters have gone on harmoniously—the

town profiting by the railroad and the railroad profiting by the town, and there has been no occasion heretofore, nor is there any occasion now, for undertaking to obstruct the public in the use of this strip as a street.   It must be borne in mind that the railroad company does not propose to construct its track across this strip, but longitudinally with it on ground which is not a street at all.

We now come to the second branch of the proposition, the question as to the implied dedication.   All of the authorities, the court will find, lay down as the essential factor in any dedication, the intention to dedicate.

At page 92 of his work on Roads and Streets, Mr. Elliott says: " If the donor's acts are such as to indicate an intention to appropriate the land to public. use, then upon acceptance by the public the dedication becomes complete.   It is essential that the donor should intend to set the land apart for the benefit of the public, for, it is held without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to public use.   If the intent to dedicate is absent, there is no valid dedication.   The intent which the law means is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner.   The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent.   If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted on by the public, the owner cannot, after acceptance by the public, recall the appropriation.   Regard is to be had to the character and effect of the open and known acts, and not to latent or hidden purposes. "

At page 96 the same author says: " The intent essential to a valid dedication must be to vest an easement, at least, in the public.   Where there is nothing more than a mere license, there is no dedication.   Where the use is merely permissive, with authority in the owner of the servient estate to put an end to

the use at his pleasure, there is no dedication; nor, in such a case, are there such acts as will enable the court to infer an intent to dedicate. While it is true that the intent to dedicate may be inferred from facts without proof or express declarations, yet it is also true that the facts must be such as indicate an unequivocal intent to devote the strip of land to the public use.''

At page 110 the author says further: ''The presumption, in cases where there is no express stipulation defining the estate granted, is that the public takes an easement. In cases of implied dedications this presumption obtains. All that can be justly inferred from user is that the public acquires an estate adequate to the accommodation of the people, and this cannot be an estate greater than an easement, since all that the public can be reasonably held to require is such an estate as will vest the right to free and unobstructed use. The owner cannot be deemed to grant a greater estate than that which the public use measures, for, as the use is the foundation of the public right, it necessarily determines its extent.''

At page 126 the same author says: '' It is, of course, essential that the use should be with the knowledge of the owner, and without interruption from him, and that it should not be under a mere license, but that it should be such a use as, in its nature and extent, asserts, by necessary implication, a claim of right. If the user falls short of this, it cannot be considered as supplying evidence sufficient to authorize, as against the owner, the presumption of an intention to dedicate, although it may be material when connected with other evidence upon that question.''

At page 31 the same author says: '' Where the situation of the land is such as to indicate that it does not form a part of the highway, although it may be alongside the way and be used by the public, no dedication can be presumed without strong evidence of an intent on the part of the owner to devote the land to the use of the public. Where the owner makes use of the

land for his own private purpose, and the character of the use is inconsistent with the right of the public to the way as a street or road, the presumption of dedication will be rebutted, although the public may have used the way for travel for many years.''

We call the court's attention, in support of the above proposition laid down in the text of Elliott on Roads and Streets, to the case of *Irvin* v. *Dickson*, 9 How., U. S., 10. This case clearly announces the doctrine for which we contend here. See, also, *McCormick* v. *Baltimore*, 45 Md., 512; *Bowman* v. *Wickliff*, 15 B. Monroe, 48.

We will now take up the other proposition—that is, title by prescription; and we think it is equally manifest that no title could be acquired by prescription under the circumstances of this case. It is manifest that the complainant bases his claim to relief in this case on the cases of *Theobold* v. *Railroad Co.*, 66 Miss., 279; *Stowers* v. *Telegraph Co.*, 68 Miss., 559; *Bloom* v. *Railroad Co.*, 71 Miss., 247. We do not undertake to question the correctness of the decisions in these cases, but we claim that the cases have no application to the case at bar on the pleadings or on the proof adduced. In those cases, the very fact which is in issue here was conceded—that is, that the railroad company in the one case, and the telegraph company in the other, was undertaking to construct its works in a public street, the contention on the part of the corporation being that it had a right to do so by virtue of contracts and licenses granted by the municipality, and that the abutting owners had no right to complain. There was no claim that the railroad company owned the land on which the track was being laid or that it was a part of its right of way, which is the case at bar.

Before a right of way can be established by prescription, it must appear that the general public, under a claim of right, and not the mere permission of the owner, have used some defined way without interruption for the period of limitation. The use must be adverse. Elliott on Roads and Streets, 237; *Lanier* v. *Boothe*, 50 Miss., 410.

*Brewer & Wilson*, for appellee.

It is settled in this state, both under the constitution (sec. 17) and the decisions before it, that the owner of property abutting on a street the title to which is in the public, can recover damages of a railroad, or enjoin it from using or building a track, unless compensation is first made to him, even though the city authorities gave the railroad permission to lay or use said track. *Railroad Co.* v. *Bloom*, 71 Miss., 247; *Theobold* v. *Railroad Co.*, 66 Miss., 279; *Stowers* v. *Postal Telegraph Co.*, 68 Miss., 559.

The railroad company certainly recognized Cemetery street as such, and asked permission of the city authorities to cross it with their proposed track, and to lay such track next to the depot. This, of course, seems sufficient to settle the controversy, as it is testified that the crossing of Cemetery street alone would damage complainant's property, and all the maps show this street just north and adjoining the depot, and continued on over to west side, where it runs into an alley running west to a livery stable and wagon yard, and is almost opposite a part of complainant's lot.

This alone would furnish ground to sustain an injunction in the state of the pleadings. But, apart from this, we contend that a public corporation, exercising public franchises and owning its holdings through them, cannot even so use its property adjoining a street as to injure the property of another on that street, without first making compensation. Our adjudications decide that this must be so where the interest was in the public before the constitution of 1890, when the words "or damaged" were not in the constitutional provision on the subject. Besides, under the common law, one could not so use his own as to damage another, without compensation. The words "or damaged" were not added to the constitution to be of no effect, but were used in the light of the decisions cited, and were surely intended to apply to a case like this, where a railroad

intended to almost ruin a street. *Vicksburg* v. *Herman*, 72 Miss., 211.

But last, and most of all, we think the evidence in this case is clear and without dispute that a parol swap was made between the city and the Mississippi Central Railroad Company, defendant's grantor, by which the defendant closed up "the old stage road" and the city and public got the use of the strip of land in dispute — all of it to the depot; that this occurred nearly thirty years ago, and that since that time the city has been in notorious possession of the land as a street, and the public have so used it, and this gives the city title to it. *Davis* v. *Davis*, 68 Miss., 478.

Even if the public acquired no easement, it would have it by adverse possession. *Alcorn* v. *Sadler*, 71 Miss., 634. But the dedication here is complete, and meets all requirements of this court, stated in the cases on this point, and shows that the railroad intended to dedicate the property to the city for mutual benefit. *Sanford* v. *Meridian*, 52 Miss., 383; *Briel* v. *Natchez*, 48 Miss., 423; *Lanier* v. *Booth*, 50 Miss., 410; *Kinnare* v. *Gregory*, 55 Miss., 612; *Potts* v. *Canton Warehouse Co.*, 70 Miss., 462–469.

This is a stronger case for the dedication than *Harrison County* v. *Seal*, 66 Miss., 129, and that case effectually disposes of the proof sought to be made by the defendant, that the city did not work the street next to defendant's depot. It was not bound to do so, though, in truth, it did so when necessary. The railroad, rather, tried to keep its approaches to its depot in good order, so as to render the approach of its customers easy; and nearly every property owner does as much. Its so doing does not disprove the dedication. The proposed track, when run and when operated with engines and cars, is a nuisance.

Argued orally by *Edward Mayes*, for appellant, and by *J. C. Wilson*, for appellee.

WOODS, C. J., delivered the opinion of the court.

Repeated and painstaking examinations of the evidence embodied in the transcript in this case satisfies us that about the year 1867 or 1868, under some agreement or arrangement between the appellant's lessor, or their predecessor, and the town authorities of Water Valley, the railroad company dedicated to public use the strip of land now, and then, known as Main street, in said town, and, as consideration therefor, the town authorities authorized the removal of the crossing over the railroad tracks where the same were intersected by the old stage road, whereby that old road was shut up and closed against further use by the public, and the railroad company was permitted to inclose and appropriate, and did, in fact, inclose and appropriate to its uses, the ground in its lots which the old stage road had theretofore occupied. The facts shown by all the witnesses on both sides, so far as any of them testify on this point, as to the public use of Main street and the closing of the old stage road, and its inclosure and appropriation and use by the railroad from that time until the present, viewed in the light of the situation of parties, the railroad and the town, leave but little room for doubt as to the existence of some understanding and agreement of the character we have indicated. Let us examine the then situation of the parties.

When the railroad acquired its right of way and its lots purchased of Carr, and established its station at Water Valley in 1855, there was no town there, and, of course, no streets, and the only thoroughfare near its depot was the old stage road, which ran with a long semicircular sweep some distance east of the depot and depot grounds of the railroad, and afforded no access to the depot. This depot itself was built in such manner that its western side was parallel with and faced upon the long and narrow western lot of land bought by the railroad company from Carr, and which is now, and for more than thirty years has been, called and known as Main street, and, although the old stage road was not abandoned by the town and the public

for about twelve years later, this western strip of ground began to be used by the public, and has been so used continuously from that day until this. From the laying of the foundations of the town this strip of ground was, and has continued to be, the principal street in the place. Lots were bought by persons on the land immediately west of this street, and houses erected on such lots upon the western boundary of the street. Two of the directors and officers of the railroad company, whose principal offices seem to have then been in Water Valley, erected business houses on the very lot abutting on this street which complainant now owns, and as to which, by the laying of the switch track complained of, he alleges he has been damaged. Thus the situation continued until 1867 or 1868, when the old stage road was finally abandoned as a thoroughfare, and was inclosed and appropriated to its own sole use by the railroad, and Main street, by many public municipal acts and ordinances, taken in control of the town. No candid and unbiased mind can reach any other conclusion, as it seems to us, than that there was a dedication by the railroad and an acceptance by the public, and especially when to these general considerations is added the evidence on this point to be found in the testimony of witnesses Goode, Knight, Mulding and Herring.

The evidence of Mr. Herring is very striking, and strongly persuasive to support the theory of dedication by the railroad company and acceptance by the public. Says Mr. Herring: "I heard the president and other officers of the company discussing the closing of said public road (the old stage road) so as to not interfere with the free use of this east depot lot for office purposes. The substance of it was this: 'The people are already using our west depot lot for a public street, and no longer need the old stage road through the east side lot. We want this closed, and let them use, in lieu thereof, the west strip or depot lot.' "

This discussion occurred about 1867 or 1868, and at a time when Mr. Herring was himself an official of the railroad com-

pany, and possessed of opportunity to learn the intention of the railroad authorities as to dedicating the land for street purposes. With this direct evidence of Mr. Herring and the other witnesses named, supplementing and corroborating the plain inferences to be drawn from the independent facts themselves, to which we have adverted, the case for appellee along this line is powerfully strengthened, and to us appears quite satisfactory.

If, however, it shall be thought that there is room for doubt as to the dedication and acceptance, we do not see how any man, prejudiced or unprejudiced, can believe, in view of all the evidence of all the witnesses on both sides who are qualified to speak, from personal knowledge and personal observation, that the public has not used this ground as a street, openly, notoriously, and adversely, for more than thirty years. Indeed, as already stated by us, Main street is the seat and center of the business life of the place. More, than that, it is the only street running north and south through the town which has an exit across the southern limits of the place. Close this street, thus used for more than thirty years, and there remains no southern highway to this populous and flourishing little city. To talk of this street not having been used openly, notoriously, and adversely during all these years, is as profitable as to undertake to demonstrate that two and three make four. It is idle to undertake either task. We do not understand the learned and conscientious counsel for the railroad to combat the proposition that the town has acquired the right to this street by user for more than thirty years—the right to the easement, by prescription, as counsel prefer to denominate it. The contention for the railroad company, as we understood it, is that not all of the ground lying between the western platform of its station house and the eastern curbstone of the sidewalk on the west side of Main street is really part and parcel of the street, but that a strip of ground, in width about fifteen feet, lying immediately alongside and adjacent to the western side of the depot and platform, has not been used as part of

Main street, but that the same has remained in the possession of the railroad, and has all along been used and controlled and managed by it.   This contention rests largely upon the fact that, not the railroad company, but its patrons, have used this strip of fifteen feet as an approach or driveway to the platform of the railroad company to deliver and receive freight. To our mind, this fact affords little, not to say no, support to this contention, for, at last, it only shows that the general public used this strip for one particular business purpose, rather than for general driving and riding, as was, and is usually, done in the middle of streets, instead of near the outer edge of the street, and in close proximity to buildings adjoining such outer edge.

But it is shown that the railroad company filled in this strip of fifteen feet with cinders and gravel, after the erection of its new depot building, and within the last four or five years. This work, however, was manifestly done to render the approach to the platform of the new depot easier and more convenient to that portion of the public having freights to deliver upon, or receive from, the new platform.   Beside the additional fact shown of the erection of a telegraph pole and guy post on this strip by a telegraphic company, with the consent of the railroad company, we recall no other act of the railroad company evincing any claim of possession and ownership of the strip of ground.

On the other hand, the overwhelming weight of the testimony in the case bears out the contention of the appellee as to the use of the entire street, from the platform on the east side of the street to the curbstone on the west side, by the city. This evidence is too voluminous to be even abstracted, and we content ourselves with the general statement of its tenor and effect just made by us.   It follows that the railroad company had no right to lay down the new switch track and devote it to the purposes designed for its use, and if such action was shown to be a nuisance, for any or all of the reasons shown by appel-

lee's evidence, and therefore hurtful to his property, as we are of opinion was done, the learned court below properly retained the injunction.

*Affirmed.*